**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER HOWE, individually, and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) SPEEDWAY LLC, et al., ) ) Defendants. ) | No. 17-cv-07303 Judge Andrea R. Wood |

**MEMORANDUM OPINION AND ORDER**

At the beginning of his employment at a Speedway gas station, Plaintiff Christopher Howe was required to scan his fingerprint, which his employer used to authenticate his identity and track his time. Howe initially brought this putative class action in Illinois state court against Defendants Speedway LLC ("Speedway") and Marathon Petroleum Co. ("Marathon"),[1] arguing that Defendants collected and stored his and similarly-situated individuals' fingerprints in violation of Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Defendants then removed the lawsuit to federal court (Dkt. No. 1), and shortly thereafter filed a motion to dismiss (Dkt. No. 25). In response, Howe moved to remand the action back to state court, claiming that Defendants' motion to dismiss demonstrated that Howe did not have Article III standing to bring this action in federal court. (Dkt. No. 50.) For the reasons that follow, Howe's motion to remand is granted and Defendants' motion to dismiss is denied as moot.

---

[1] In his Complaint, Howe also named Kronos, Inc. ("Kronos") as a Defendant, but Howe has since voluntarily dismissed Kronos from this action pursuant to Federal Rule of Civil Procedure 41(a). (Dkt. No. 15.)

**BACKGROUND**

Howe is an Illinois resident who worked at a Speedway gas station in Addison, Illinois from September 2015 to May 2017. (Compl. ¶¶ 10, 36, Dkt. No. 1-1.) Speedway required its employees to scan their fingerprints, which were stored in a database operated by its vendor, Kronos. (*Id.* ¶¶ 2, 6, 38.) It used the employees' fingerprints to authenticate their identities and to track their time. (*Id.* ¶ 37.) Specifically, at the beginning of each work day, an employee would clock in by scanning his fingerprint and then scan his fingerprint again at the end of the day to clock out. (*Id.* ¶¶ 2–3, 29, 39.) Howe's fingerprint data was used for this purpose during his employment at Speedway. (*Id.* ¶ 39.)

According to Howe, Speedway collected, stored, and used his fingerprints in violation of BIPA. Illinois passed BIPA in 2008 in order to provide certain protections for the biometric identifiers—such as fingerprints—and biometric information of Illinois citizens. (*Id.* ¶¶ 18, 21.) The statute includes provisions requiring any private entity to make two disclosures and receive a written release before collecting a person's biometric identifier or information. (*Id.* ¶ 19; 740 ILCS 14/15(b).) In particular, the entity must disclose in writing to the person whose biometric data is being collected "that a biometric identifier or biometric information is being collected or stored." (Compl. ¶ 19; 740 ILCS 14/15(b)(1).) Then, the person must be informed "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." (Compl. ¶ 19; 740 ILCS 14/15(b)(2).) Furthermore, a private entity that is in possession of biometric data

> must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in

2

>  possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

(Compl. ¶ 23; 740 ILCS 14/15(a).)

Howe filed the present class action against Speedway and Marathon (of which Speedway is a wholly-owned subsidiary) seeking statutory damages under BIPA on behalf of himself and a class of similarly-situated individuals, as well as an injunction forcing Defendants to comply with BIPA. (Compl. ¶¶ 61–76.) In addition, Howe seeks damages for Defendants' negligence. (*Id.* ¶¶ 77–84.) In his complaint, Howe alleges that Speedway violated BIPA because it never provided any disclosures nor did it obtain his written release before scanning and storing his fingerprints. (*Id.* ¶¶ 40, 42.) He further alleges a violation stemming from Speedway's failure to create and make publicly available its retention and destruction policy for biometric data. (*Id.* ¶ 41.) As a result of Speedway's BIPA violations and negligence, Howe claims to have been injured in three respects. His first claimed injury is the invasion of his right to privacy caused by Speedway's collection and storage of his biometric data without proper disclosures or authorization. (*Id.* ¶ 44.) Howe also alleges an informational injury on account of Speedway's failure to provide him information to which he was entitled to under BIPA. (*Id.* ¶ 45.) Finally, he claims to have suffered mental anguish and injury from contemplating the possibility that his biometric data might be compromised. (*Id.* ¶ 47.)

This class action was originally filed in the Circuit Court of Cook County, Illinois, however Defendants removed the action to this Court, claiming jurisdiction on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. (Notice of Removal at 1.) Following removal, Defendants moved to dismiss Howe's action under Federal Rule of Civil Procedure 12(b)(6). In response, Howe moved to remand the case back to state court asserting that Defendants' Rule 12(b)(6) argument raises doubt as to Howe's standing to proceed before a

federal district court. His motion to remand also seeks attorneys' fees and costs incurred as a result of the improper removal, pursuant to 28 U.S.C. § 1447(c).

## DISCUSSION

### I. Motion to Remand

Any action that could have been originally filed in federal court is properly removable. 28 U.S.C. § 1441. To remove a case to federal court, a defendant need only file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446. Pursuant to CAFA, a federal court has subject-matter jurisdiction over class actions where the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 551–52 (2014). Defendants' notice of removal establishes that the action was removable under CAFA, and Howe does not dispute that.

Yet having removed the action to federal court, Defendants proceeded to file a motion to dismiss that, while styled as a Rule 12(b)(6) motion, appears to cast doubt on Howe's Article III standing. Defendants' motion to dismiss argues that Howe has failed to state a claim under BIPA because the statute's cause of action is only available to a "person aggrieved by a violation" of the statute. (Mem. in Support of Mot. to Dismiss at 3, Dkt. No. 26.) Defendants contend that to be a "person aggrieved," a plaintiff must have been injured by a BIPA violation. (*Id.* at 4–10.) Howe is not "aggrieved," according to Defendants, because he alleges only technical violations of the statute but "alleges no facts to indicate he was injured" by those violations (*Id.* at 3.) While Defendants' motion to dismiss is carefully cabined to issues regarding Howe's ability to state a claim, Howe asserts that their arguments nonetheless implicate Article III standing and thus the Court's ability to hear the case at all. Its jurisdiction having been called into question, the Court

must resolve whether Howe has constitutional standing before it can address whether Howe failed to state a claim upon which relief may be granted. *See Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) ("Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action.").

Standing is an essential component of Article III's limitation of federal courts' judicial power only to cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). There are three elements that constitute the "irreducible constitutional minimum" of standing. *Lujan*, 504 U.S. at 560. A "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (internal quotation marks omitted). Where a plaintiff does not have Article III standing, a federal district court lacks subject-matter jurisdiction to hear his or her claims. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

By contrast, a plaintiff may have constitutional standing yet nonetheless lack statutory standing. Statutory standing asks "whether the statute grants the plaintiff the cause of action that he asserts." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 & n.4 (2014). A plaintiff has statutory standing only when his or her interests "fall within the zone of interests protected by the law invoked." *Lexmark*, 134 S. Ct. at 1388 (internal quotation marks omitted). The zone of interests test, in turn, requires the court "to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular

5

plaintiff's claim." *Bank of Am.*, 137 S. Ct. at 1302–03. Despite its name, statutory standing does not implicate a court's subject-matter jurisdiction but is better understood as a Rule 12(b)(6) issue. *Lexmark*, 134 S. Ct. at 1387 n.4; *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 951 (N.D. Ill. 2016).

On its face, Defendants' motion to dismiss is directed only to Howe's statutory standing under BIPA—namely, whether Howe is a "person aggrieved" who can maintain an action. Their argument implicitly concedes (at least for purposes of this stage in the proceedings) that they did not follow BIPA's disclosure and authorization requirements, but goes on to contend that because those violations did not injure Howe, BIPA does not supply him with a cause of action. Yet Defendants' argument about Howe's lack of injury raises the issue of whether he has alleged an injury-in-fact for purposes of Article III standing. Indeed, the motion to dismiss is predicated on Defendants' contention that Howe has "allege[d] no facts to indicate that he was injured," (Mem. in Support of Mot. to Dismiss at 3) and contests the sufficiency of the injuries Howe does allege in the Complaint (*id.* at 10–13). Moreover, many of the cases upon which Defendants rely in support of their claim that Howe is not a "person aggrieved" are in fact cases in which courts dismissed complaints for want of constitutional standing. *See, e.g.*, *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499 (S.D.N.Y. 2017), *aff'd in part and vacated in part*, *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. Nov. 21, 2017); *McCullough v. Smarte Carte, Inc.*, No. 16 C 03777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016).

Procedurally, Howe finds himself in an awkward position. To succeed in his lawsuit, he must establish that he is a "person aggrieved" who has statutory standing to assert a cause of action under BIPA. However, if he has a cognizable injury under BIPA, then it follows that he also has constitutional standing and must proceed in a disfavored forum. Therefore, in an effort to

achieve remand without fatally undermining his claims, Howe declines to take a position on constitutional standing and argues that it is Defendants' burden to establish such standing. Howe is correct. As the Seventh Circuit recently held, where a party invokes federal jurisdiction by removing a suit from state court, that party must "establish that all elements of jurisdiction— including Article III standing—existed at the time of removal. *Collier v. SP Plus Corp.*, No. 17-2431, 2018 WL 2186786, at *2 (7th Cir. May 14, 2018) (per curiam).[2]

To avoid remand, Defendants find themselves having to establish that Howe has suffered a sufficient injury for purposes of Article III standing even as their motion to dismiss vigorously contests the adequacy of his injury for purposes of statutory standing. Yet it is possible for Defendants to thread this needle. Constitutional standing and statutory standing are distinct inquiries. *See Lexmark*, 134 S. Ct. at 1386. And a plaintiff may well have Article III standing to maintain an action, but nonetheless lack statutory standing because the statute under which he or she is suing does not supply a cause of action to individuals in the plaintiff's position. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

Here, the constitutional standing dispute centers solely on whether Defendants' failure to provide certain disclosures and obtain Howe's authorization before collecting his fingerprints satisfies the injury-in-fact element of the standing inquiry. An injury-in-fact is established by showing that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury is particularized when it affects "the plaintiff in

---

[2] *Collier* was decided after the parties had submitted their briefs. But it was submitted by Howe in the form of a notice of supplemental authority (Dkt. No. 78), and Defendants then sought leave to file a response to the notice of supplemental authority (Dkt. No. 79). That motion is now granted. The Court agrees with Defendants that *Collier* does not change the proper analysis of the motion to remand, as Defendants set forth a colorable argument concerning the existence of Article III standing here. Nonetheless, for reasons explained below, the Court finds that Howe does not have Article III standing here.

a personal and individual way." *Id.* A concrete injury is one that actually exists. *Id.* However, the concreteness requirement does not mean that the injury must actually be tangible. *Id.* at 1549. Intangible injuries can be concrete. *Id.* Indeed, a legislature can identify intangible harms and elevate them to the status of legally cognizable injuries. *See id.* Still, a plaintiff does not automatically possess an injury-in-fact just because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* What does not suffice is "a bare procedural violation, divorced from any concrete harm." *Id.* Since *Spokeo*, the Seventh Circuit has elaborated that for a statutory violation to constitute an injury-in-fact, it must present an "appreciable risk of harm to the underlying concrete interest that Congress [or the state legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (internal quotation marks omitted).

In his complaint, Howe alleges three injuries: mental anguish, invasion of privacy, and an informational injury. Two of those injuries clearly do not suffice. Howe alleges that he suffers mental anguish over his uncertainty regarding what Speedway will do with his biometric data. However, he makes no allegations that this data was compromised or is likely to be compromised. This type of mental anguish injury is precisely the type of conjectural or hypothetical injury that cannot support Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Whitmore v. Arkansas*, 495 U.S. 149, 158 ("Allegations of possible future injury do not satisfy the requirements of Art. III."). Howe's invasion of privacy injury also cannot support standing because the complaint gives no indication that Speedway "has released, or allowed anyone to disseminate, any of the

8

plaintiff's personal information in the company's possession." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017).

That leaves Howe's informational injury as the only possible injury-in-fact. An informational injury is one where a "plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). However, for an informational injury to support standing, "the injury must be 'precisely the form the statute was intended to guard against.'" *Groshek*, 865 F.3d at 888 n.3 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982)).

Howe's informational injury was caused by Defendants' failure to provide him with the required disclosures before collecting his fingerprints, as well as its failure to make publicly available a biometric data retention and destruction policy. For this informational injury to confer standing, it must present a risk of harm to the concrete interest that Illinois sought to protect in enacting BIPA. The statute contains several legislative findings reflecting on the harm it was enacted to prevent. Among other things, it notes that "[b]iometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c). The findings further state that "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* 14/5(g). The substantive provisions of the statute include provisions prohibiting private entities from selling or otherwise disseminating a person's biometric data without authorization. *Id.* 14/15(c), (d). In addition, it requires private entities in possession of biometric data to store and protect that data using reasonable care. *Id.* 14/15(e). Taken together, these provisions illustrate that the concrete interest underlying BIPA is the

protection and security of biometric data. *See Vigil*, 235 F. Supp. 3d at 510 ("[T]he core object of the BIPA is data protection to curb potential misuse of biometric information collected by private entities.").

The question here then is whether Defendants' alleged disclosure failures constitute a concrete harm to this interest in data protection. Put another way: Is the injury that Howe suffered as a result of his failure to receive disclosures the type of injury the statute seeks to guard against? Absent any additional harm caused by the failure to provide the required disclosures, that question must be answered in the negative. BIPA's disclosure requirements serve the statute's data protection goals, but they do not create a standalone concrete interest in obtaining that information. *Id.* at 513 ("Unlike statutes where the provision of information about statutory rights . . . is an end itself, the BIPA's notice and consent provisions do not create a separate interest in the right-to-information, but instead operate in support of the data protection goal of the statute."). For example, while a private entity is required to make its retention schedule and destruction guidelines publicly available, the public availability requirement is ancillary to the provision's primary purpose—protecting the biometric data by mandating the private entity's compliance with that policy. *See* 740 ILCS 14/15(a).

It is true that some courts have framed BIPA's data protection interest as a data privacy interest and found that a private entity's collection of biometric data without proper disclosure and authorization confers standing. *E.g.*, *Patel v. Facebook Inc.*, No. 3:15-cv-03747-JD, 2018 WL 1050154 (N.D. Cal. Feb. 26, 2018); *see also Vigil*, 235 F. Supp. 3d at 510 (noting that data privacy is an alternative way of formulating BIPA's data protection interest). However, those cases involved the non-consensual collection of biometric information. For example, the *Patel* plaintiffs were Facebook users who uploaded photographs of themselves to the social network.

Unbeknownst to them, Facebook extracted biometric identifiers from its users' photographs in order to create and store digital representations of their faces that would then be used to identify those users' faces in other pictures and generate "Tag Suggestions."[3] *Id.* at *1. Similarly, in *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *1 (N.D. Ill. Sept. 15, 2017), a photo-sharing website used facial recognition technology to scan images uploaded by users and "extract a highly detailed 'map' or 'template' for each face," which was then stored and used to suggest a "tag" for new photos with faces matching that map. The face mapping was performed non-consensually on any individual appearing in a photo uploaded to the website, no matter whether the individual was a user or non-user of the platform. *See id.* Several other cases proceeding in federal court also involved non-consensual collection of biometric data. *See, e.g.*, *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1090–91 (N.D. Ill. 2017); *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015).[4] The failure to provide disclosures and obtain written authorization in these cases rose to the level of an injury-in-fact because it resulted in the collection and storage of the plaintiffs' biometric data without their knowledge or consent.

By contrast, Howe's fingerprints were collected in circumstances under which any reasonable person should have known that his biometric data was being collected. At the beginning of his employment at Speedway, Howe voluntarily submitted to a fingerprint scan. He then scanned his fingerprint at the beginning and end of each work day, thereby allowing Defendants' system to identify him and track his hours. It should have been readily apparent to

---

[3] A Facebook "tag" is a way Facebook users identify their friends in photographs they upload to their profiles. *Patel*, 2018 WL 1051054, at *1.

[4] These cases involved Rule 12(b)(6) motions, and the courts' subject-matter jurisdiction was never squarely raised. Nonetheless, the fact that the courts ruled on the Rule 12(b)(6) motions implies that they were satisfied that they had subject-matter jurisdiction.

Howe that his fingerprint was being scanned and stored, otherwise how would Speedway's time system recognize him based on that fingerprint?

The facts in this case are analogous to those in the cases finding no injury-in-fact from a private entity's failure to provide disclosures. In *McCullough v. Smarte Carte, Inc.*, 2016 WL 4077108, the plaintiff had to scan her fingerprint before renting a locker. When she returned to the locker she unlocked it by again scanning her fingerprint. The court observed that the plaintiff "undoubtedly understood when she first used the system that her fingerprint data would have to be retained until she retrieved her belongings from the locker." *Id.* at *3. The court then held that, while the defendant's failure to obtain advance consent and make the required disclosures was a technical violation of BIPA, there was no injury-in-fact because the plaintiff did not allege that her biometric information was disclosed or at risk of disclosure. *Id.* In *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, a basketball videogame allowed players to create a digital player in their likeness by holding their face to a camera and allowing the game to scan their faces and map it onto an avatar. *Id.* at 505. While the videogame developer did provide limited disclosures before collecting the biometric data, the plaintiffs argued that the disclosures were deficient. Finding that these procedural violations did not implicate BIPA's data protection interest, the court observed that "the plaintiffs, at the very least, understood that [the videogame developer] had to collect data based upon their faces in order to create the personalized basketball avatars, and that a derivative of the data would be stored in the resulting digital faces of those avatars so long as those avatars existed." *Id.* at 515.

In both *McCullough* and *Vigil*, as here, proper compliance with BIPA's disclosure and written authorization requirements would only have made explicit what should have already been obvious. *Patel*, 2018 WL 1050154, at *5 ("In [*McCullough* and *Vigil*], the plaintiffs had sufficient

notice to make a meaningful decision about whether to permit the data collection."). Moreover, the procedural violations in all three instances were not connected to any harm to the security or privacy of the plaintiffs' biometric data, and therefore could not be considered an injury-in-fact for purposes of standing. Even the BIPA cases finding standing are in accord. *See id.* (finding that the factual differences in *McCullough* and *Vigil* made those cases "of little value in addressing the allegations . . . that Facebook afforded plaintiffs no notice and no opportunity to say no"); *Monroy*, 2017 WL 4099846, at *8 n.5 ("The harm alleged in [*McCullough* and *Vigil*] was the defendants' failure to provide them with certain disclosures . . . . [the plaintiff in this action], by contrast, alleges that he had no idea that [the defendant] had obtained his biometric data in the first place.").

Comparing *McCullough* and *Vigil* with *Patel* and *Monroy* elucidates the purpose of BIPA's disclosure requirements: the disclosure requirements support BIPA's data protection interest by preventing individuals from unwittingly sharing their biometric identifiers and information. Thus, a person uploading a photo to Facebook should be provided fair notice that by doing so their faces will be mapped and stored; otherwise, the person might not be aware of the biometric data collection. On the other hand, where individuals are obviously sharing biometric data—whether holding their fingerprint to a scanner or their face to a camera—the procedural violation from disclosure omissions causes negligible harm for Article III purposes. Because Howe's allegations fit with the latter scenario, he has not suffered an injury-in-fact.

Defendants undoubtedly violated BIPA if they failed to provide Howe disclosures and obtain his written authorization prior to collecting and storing his fingerprints and did not create or make publicly available a biometric data retention and destruction policy. However, those

procedural violations did not cause him an injury-in-fact.[5] Consequently, Howe does not have standing to have his claim heard in federal court and the action must be remanded to state court.

## II. Attorneys' Fees and Costs

Having found that the action must be remanded, Howe may be eligible for attorneys' fees and costs. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, attorneys' fees are generally only available under if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, because Defendants' made a colorable, if not winning, argument for constitutional standing in their Opposition to Remand, the Court declines to award Howe attorneys' fees and costs incurred as a result of the removal of this action.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (Dkt. No. 50) is granted. Furthermore, because the Court cannot rule on the merits of a claim that it lacks subject-matter jurisdiction to hear, Defendants' motion to dismiss (Dkt. No. 25) is denied as moot. This action is remanded to the Circuit Court of Cook County, Illinois.

ENTERED:

Dated: May 31, 2018

_____
Andrea R. Wood
United States District Judge

---

[5] The Court expresses no opinion as to whether Howe qualifies as a "person aggrieved" by a violation of BIPA within the meaning of that statute or on any other merits issue that may be litigated in state court. Indeed, the Court has no power to address the merits given its lack of subject-matter jurisdiction. *See Freedom From Religion Foundation*, 845 F.2d at 1467.